Andrew T. WHITNEL, III, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Jan. 5, 1978.

Certiorari Denied by Supreme Court April 10, 1978.

E. Lee Allen, Nashville, for appellant.

Brooks, McLemore, Jr., Atty. Gen., Henry E. Hildebrand, III, Asst. Atty. Gen., Harold B. McDonough, Jr., Ronald E. Miller, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

DAUGHTREY, Judge.

The defendant-appellant, Andrew T. Whitnel, III, was convicted of possession of a controlled substance (heroin) with the intent to resell and of simple possession of a controlled substance (a variety of pills), for which he received sentences of five to ten years and eleven months, twenty-nine days, respectively. On appeal he challenges: (1) the sufficiency of the evidence to support the jury's verdict, (2) the alleged excessive-ness of the sentences imposed, and (3) the validity of the police search of his automobile that resulted in the seizure of the controlled substances involved in his prosecution. We find no reversible error on these grounds, and we affirm the convictions.

Two local police officers in a patrol car first spotted the defendant's automobile at 4:00 A.M., parked next to another car in the otherwise empty parking lot of a closed-down motel. Because of the late hour and the location of the two vehicles in what the officers described as a high crime area, they decided that further investigation was warranted. When the police officers approached the two automobiles, the vehicles were driven off in opposite directions and the officers fell in behind the defendant's car, an early model station wagon. Instead of stopping the car immediately, the officers continued to follow it for some distance. Both officers testified at trial that when the station wagon came to a halt at the first stop sign on its route, they noticed that the brakelights on the rear of the vehicle were not working. On the basis of this apparent violation of T.C.A. § 59–905, the officers stopped the vehicle by use of their emergency equipment, and the defendant emerged from the driver's side of the car, while his female companion remained in the vehicle.

While one of the officers took down information concerning the defendant's driver's license, etc., and questioned him about a pump shotgun lying in view on the rear seat of the station wagon, the second officer made a cursory visual inspection of the interior of the vehicle and spotted a second weapon, a rifle. Both the shotgun and the rifle were loaded. The officers immediately arrested the defendant for violation of T.C.A. § 39–4901, carrying a weapon for the purpose of going armed.

One of the officers testified that upon further inspection of the car, he saw an amber-colored commercial pill bottle "sticking about halfway out from under the front seat [on the driver's side], with aluminum foil . . . a little package of aluminum

foil wrapped up inside of it, which [he] suspected to be heroin . . .," based on his training at the local police academy. The officer retrieved the pill bottle and found that it actually contained thirteen small foil-wrapped packets. A similar pill bottle found underneath the same seat contained an assortment of pills, which were later analyzed as Schedule II drugs. Tests showed that each of the thirteen foil packets contained heroin.

The weapons charge was subsequently abandoned by the prosecution.

■ One month prior to trial on the narcotics charges, the defendant filed a motion to suppress the drugs seized by the police, alleging lack of probable cause to stop the automobile driven by the defendant at the time of his arrest. There is no indication that this motion was ever ruled on prior to trial, nor was it reviewed at the beginning of the trial or at anytime prior to introduction of the evidence in question. During the trial the defendant attempted to show by cross-examination of the State's witnesses that the drugs belonged to his companion rather than to him. This effort was thwarted by the officers' testimony concerning the events surrounding the arrest, including the defendant's on-the-scene statement that the narcotics were his and not his passenger's.

The defendant did not contest the voluntariness or truthfulness of this admission. He did, however, contest the accuracy of the officers' testimony that his brakelights were not working on the night in question. The defendant offered testimony from members of his family that the brakelights were operational two days after his arrest, while the automobile was still impounded at the police tow-in lot. Pictures taken by the defendant at that time were introduced, purportedly showing the brakelights in operation. But a review of the exhibits leads us to conclude that the photographs do not clearly depict what they are alleged to demonstrate. Furthermore, the defendant's own testimony concerning the brakelights on his car was for some unexplained reason heard outside the presence of the jury.

The defendant made no contemporaneous objection to the introduction of the drugs, nor did he attempt to impeach the officer's testimony that the pill bottle containing heroin was lying on the floorboard of the automobile "in plain view." At the end of the State's case he made a three-pronged motion for a directed verdict, alleging *inter alia* that the State had made "no presentation of probable cause for the stopping of the vehicle and the subsequent arrest and search." The defense attorney did not argue his motion, there was no response from the State, and it was perfunctorily overruled by the trial judge. At the end of all the proof, the attorney asked, "Could I renew all previous motions?" To this the trial judge replied, "All right. Let them all be overruled." The defendant later raised the Fourth Amendment question in his motion for a new trial and has brought it before this Court by assignment of error on appeal.

The record demonstrates to our satisfaction that the defendant abandoned his motion to suppress the narcotics involved in this case when (1) he failed to enter a contemporaneous objection to their introduction into evidence, and (2) he did not adequately press that portion of his motion for a directed verdict related to this issue. Given this state of the record, we are left greatly in doubt as to whether or not the trial judge ever made a conscious and specific ruling on any facet of the search and seizure issue now raised on appeal. This doubt could have been avoided if the defendant's attorney had made timely objection to the introduction of the evidence in question.

Under the contemporaneous objection rule, "errors, to which no objections are made and exceptions taken in the court below, cannot be raised on appeal." *Ezell v. State,* 220 Tenn. 11, 413 S.W.2d 678, 681 (1967). Both the state and federal courts have long recognized that "the rule requiring contemporaneous objection to the introduction of illegal evidence clearly serves a legitimate state interest." *Crawford v. State,* 4 Tenn.Cr.App. 142, 150, 469 S.W.2d

524, 527 (1971); *accord, Henry v. Mississippi,* 379 U.S. 443, 448, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594, 608–09 (1977). The rule has also been held constitutional. *Wainwright v. Sykes, supra* 433 U.S. at 86, 97 S.Ct. at 2506, 53 L.Ed.2d at 608. Applied to the record before us, that rule prevents our review of the search and seizure question on its merits. We therefore overrule the defendant's assignment of error attacking the legality of the evidence introduced in this case.

 The remaining assignments of error are likewise without merit. The evidence, when measured by the relevant standard, is clearly sufficient to support the verdict. *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1963). The sentences are within the limits prescribed by statute, and for this reason they cannot be said to be legally excessive. *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523 (1963).

The judgment of the trial court is affirmed.